St. John's General Hospital, Petitioner *v.* Commonwealth of Pennsylvania, Department of Public Welfare, Respondent.

Argued November 21, 1980, before Judges WILKINSON, JR., BLATT and MACPHAIL, sitting as a panel of three.

*Edward L. Kochuba, Jr.*, with him *John B. Nicklas, Jr., McCrady, Nicklas & McCrady*, for petitioner.

*Edward P. Carey*, Assistant Attorney General, with him *Bruce G. Baron*, Assistant Attorney General, for respondent.

OPINION BY JUDGE BLATT, February 10, 1981:

St. John's General Hospital (St. John's) appeals here from an order of the Hearing and Appeals Unit of the Department of Public Welfare which denied the claims of St. John's for reimbursement from the Department of Public Welfare (DPW) for costs which St. John's alleges to have incurred pursuant to DPW's inpatient hospital care program.

Between October of 1971 and January of 1972, St. John's provided inpatient hospital care to 46 heroin addicts, all of whom were hospitalized for periods of from four to seven days each. and were treated with methadone to supplant their heroin addiction. The record indicates that the cost of the treatment was about $20,000.

Both St. John's and the DPW submit that St. John's right to reimbursement depends upon an interpretation of Section 9421.5 of DPW's Medical Assistance Manual,[1] which provides:

---

[1] Department of Public Welfare, Medical Assistance Manual, effective April 1, 1968.

> An essential element in assuring high quality medical care is sound utilization of institutional facilities and professional services. Alternative, less costly arrangements would be utilized whenever hospital-type care is not *essential* to the well-being of the patient. (Emphasis in original.)

The hearing examiner concluded that inpatient hospital treatment was not essential for the methadone program and denied St. John's claim for reimbursement.[2]

---

Both parties characterize this section as a "regulation" and, thus, as promulgated in accordance with the Commonwealth Documents Law, Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §1101 *et seq.*, but the parties do not present, nor can we discover, the date of its publication in the Pennsylvania Bulletin. Because the section in question was promulgated by the DPW and filed with the Legislative Reference Bureau before the effective date of the Commonwealth Documents Law, and because the methadone program in question was carried out after the Law's effective date, the validity of the DPW's application of the section to the conduct in question is unclear. *See Pennsylvania Human Relations Commission v. Norristown School District*, 20 Pa. Commonwealth Ct. 555, 342 A.2d 464 (1975) *and* Section 208 of the Commonwealth Documents Law, 45 Pa. C. S. §1208. As these issues were not raised by the parties, they will not be considered here. *Wiegand v. Wiegand*, 461 Pa. 482, 337 A.2d 256 (1975). And because the parties apparently agree that the standard expressed in Section 9421.5 for inpatient care shall govern the program in question, we will assume for the purpose of this case that Section 9421.5 is, at least, an administrative statement of policy or an agreement entered into between the parties pursuant to Section 443.1 of the Public Welfare Code, Act of June 13, 1967, P.L. 31, *as amended*, 62 P.S. §443.1(1), and that it is determinative of this controversy.

[2] The hearing examiner also based his decision on Section 9421.45 of the DPW Medical Assistance Manual.

This section prohibits reimbursement for inpatient care if the care is for "experimental, research or educational purposes." Despite the overwhelming weight of evidence presented by St. John's to the effect that its methadone program was a practical and

Our *scope of review in this case is* limited by Section 704 of the Administrative Agency Law, 2 Pa. C. S. §704, to a determination of whether or not the adjudication by the DPW was supported by substantial evidence. *Ernst v. Department of Public Welfare,* 37 Pa. Commonwealth Ct. 643, 391 A.2d 1116 (1978). We have reviewed the record of the hearing below and must conclude that the DPW presented substantial evidence to support the hearing examiner's finding that inpatient hospital care was not essential to the well-being of the patients here concerned.

Dr. Alexander Slavcoff, a DPW medical consultant, testified that St. John's methadone program was not a detoxification program but a maintenance program. That is, heroin addicts were not detoxified, but their dependence on heroin was replaced by the use of methadone. He testified that such a transference could be achieved in an outpatient program because the methadone program does not subject the patient to serious symptoms of drug withdrawal which would require inpatient care. Serious withdrawal symptoms, he said, would occur only in a program which attempts to detoxify a patient completely by substituting for heroin progressively smaller quantities of methadone. Dr. Slavcoff also referred to a 1970 study conducted at methadone centers in Philadelphia and Pittsburgh which indicated that a methadone maintenance program such as St. John's program could be carried out as effectively in an outpatient program as in an inpatient program.

Moreover, although the testimony of the St. John's physician who helped to supervise the methadone pro-

established method for the treatment of heroin addiction, and that the program was not for experimental, research or educational purposes, the hearing examiner found otherwise. As this appeal is resolved under Section 9421.5, however, the hearing examiner's error is harmless.

gram, Dr. Marshall Johnson, indicates that inpatient care does yield better results than does outpatient care, largely because the patients do not have access to heroin, he also testified that inpatient care is not essential to achieve methadone maintenance of heroin addicts.

We believe that the hearing examiner's finding that St. John's inpatient methadone program was not essential to the well-being of the patients was based on substantial evidence and must therefore be affirmed.

## ORDER

AND, NOW, this 10th day of February, 1981, the order of the Department of Public Welfare Hearing and Appeals Unit in the above-captioned case is affirmed.